# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEREMY RUSS,**

                Petitioner,

             v.                            Case No. 07-C-232

**GREG GRAMS,**
**Warden, Columbia Correctional Institution,**

                Respondent.

## ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

Jeremy Russ ("Russ") is a prisoner incarcerated pursuant to a Wisconsin state court judgment and seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On March 19, 2007, this court screened Russ' petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. The respondent answered the petition on May 17, 2007. The pleadings on Russ' petition are now closed and the matter is ready for resolution. The parties have previously consented to the full jurisdiction of a magistrate judge.

**FACTS**

On August 8, 2003, Russ pled guilty to one count of second-degree sexual assault with the use of force, in violation of Wisconsin Statute § 940.225(2)(A), (Ans. Ex. at 101), and one count of lewd and lascivious behaviour, in violation of Wisconsin Statute § 944.20(1)(B), (Ans. Ex. at 103). On the same day, he was sentenced to an indeterminate sentence of 15 years in prison, (Ans. Ex. at 101), and 9 months in jail to be served consecutively, (Ans. Ex. at 103). Russ filed a motion for post-conviction relief and appealed the trial court's denial of this motion. In a published decision, the court of appeals affirmed the trial court on December 21, 2005. State v. Russ, 2006 WI App 9,

289 Wis. 2d 65, 709 N.W.2d 483; (Ans. Ex. at 107). On March 15, 2006, the Wisconsin Supreme Court denied review. (Ans. Ex. at 122.)

The following relevant facts are contained in the court of appeals' decision:

This case concerns a deaf person, Jeremy D. Russ, who was shackled during his plea and sentencing hearing and claims that his restraints substantially impeded his ability to communicate by sign language. . . . Despite an invitation by the court to let it know if any communication problems ensued, he never expressed any difficulty. Moreover, at the postconviction hearing, he never called his interpreters to the stand, never called his trial attorney, and did not take the stand himself. Rather, he merely called an expert in sign language to testify that, generally speaking, shackles can inhibit sign language communication. . . .

This case has a long procedural history that need not be rehashed in this opinion. Suffice it to say, Russ had earlier been found to be incompetent due to being developmentally disabled. However, following a later contested competency hearing, he was found to be competent. Pursuant to a plea bargain, Russ agreed to plead guilty to one count of second-degree sexual assault and one count of lewd and lascivious exposure resulting from two separate complaints. Other counts were dismissed and read in.

At the plea hearing, Russ' counsel requested the court to order Russ' handcuffs removed so that he could sign and communicate if he had questions. The court denied the request, stating that based on its observations from prior hearings, Russ communicates adequately with his hands even while shackled. The court did say it would reconsider the issue, however, if it became apparent during the course of the hearing that Russ could not communicate effectively. Russ had two interpreters at the hearing, and through the interpreters the court engaged Russ in a plea colloquy. The court accepted the pleas, observing that Russ' responses through the interpreters were "proper and intelligent responses to each of my questions" and again opined that based on the court's observations at this hearing and others, Russ could sign appropriately.

Following a break, the court proceeded directly to sentencing. Defense counsel renewed her request to have Russ' handcuffs removed, and the court again denied that request. The court sentenced Russ to fifteen years' imprisonment on the sexual assault charge and further ordered that it be served consecutive to a Milwaukee county conviction that he was then serving. The court imposed an additional nine-month consecutive sentence for the lewd and lascivious conviction, along with a restitution order of $ 160 to the victim of that charge. Russ subsequently filed for postconviction relief, asserting that the use of handcuffs impeded his ability to communicate to such a degree that it prevented him from being effectively present at the proceedings, denied him the right to assistance of counsel, and denied him due process. He also claimed that the sentence was too harsh.

> The court ultimately denied the motion in all respects. The court opined that it had taken proper account of Russ' background, including his deafness and mental status. It discounted the expert's testimony as purely theoretical in that her testimony had not demonstrated any link between her theoretical assertions and the actual facts of Russ' case.

Russ, 2006 WI App 9, ¶¶3-5.

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and

applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

**ANALYSIS**

Russ seeks relief on three related grounds. Russ argues that being handcuffed and shackled prohibited him from communicating thereby (1) depriving him of his constitutional right to be present at his sentencing; (2) denying him the effective assistance of counsel; (3) depriving him of the right to due process.

In his brief to the court of appeals, Russ argued that the court's refusal to remove Russ' handcuffs and shackles was equivalent to gagging him, a scenario addressed by the United States

Supreme Court in Illinois v. Allen, 397 U.S. 337 (1970). (Ans. Ex. at 1172.) In Allen, the defendant was removed from the courtroom during his jury trial after repeatedly engaging in violent and abusive outbursts that disrupted the proceedings to such a degree that it essentially made it impossible to conduct the trial. Id. at 339-41. The Court held that a defendant may forfeit his constitutional right to be present in court by repeatedly disrupting court proceedings. Id. at 342. The Court further noted that a constitutional alternative to entirely removing the defendant from the proceedings is to bind and gag him. Id. at 343-44. However, the Court cautioned that such restraint should be utilized only as a last resort because

> the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but [also] the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. Moreover, one of the defendant's primary advantages of being present at the trial, his ability to communicate with his counsel, is greatly reduced when the defendant is in a condition of total physical restraint. It is in part because of these inherent disadvantages and limitations in this method of dealing with disorderly defendants that we decline to hold with the Court of Appeals that a defendant cannot under any possible circumstances be deprived of his right to be present at trial. However, in some situations which we need not attempt to foresee, binding and gagging might possibly be the fairest and most reasonable way to handle a defendant who acts as Allen did here.

Id. at 344. In his concurrence, Justice Brennan stated his opinion that "shackling and gagging a defendant is surely the least acceptable of them. It offends not only judicial dignity and decorum, but also that respect for the individual which is the lifeblood of the law." Id. at 350-51.

As for his claim regarding his alleged denial of his right to counsel, in his brief to the court of appeals, he relied upon Geders v. United States, 425 U.S. 80 (1976). Russ argued that by keeping him restrained, he was denied the assistance of counsel, particularly in light of his limited mental capacities. (Ans. Ex. at 1175.)

Finally, with respect to his argument that he was denied his right to due process, Russ argued in his brief to the court of appeals that keeping him restrained "demean[ed] the integrity of the criminal justice system." (Ans. Ex. at 1176.)

The court of appeals affirmed the trial court and rejected all of his claims for relief, holding that Russ failed to meet his burden. In an opinion authored by Chief Judge Richard S. Brown, the court stated:

> We hold that Russ has failed to meet his burden. He called a single witness to testify at the October 19 postconviction hearing, and she was the sole witness to testify for either party. This witness was a deaf woman who used American Sign Language as her native language and taught college courses on ASL. She explained that four factors, namely, palm orientation, handshake, location, and movement, were critical to effectively communicating through sign language. She placed particular emphasis on location of the hands. "For example," she explained, "the signs for boy and girl respectively must each occur on the head. You cannot, for example, use the sign for boy and place it at chest level. It would not be understood." Signing space for ASL users, according to this witness, includes the space "roughly between the pelvis and the top of the head, and then a few feet out from the signer's body." She opined that communication would be limited and difficult if a deaf person who used sign language were handcuffed and that in her experience, conversations with people in handcuffs were very stilted and frustrated: "I saw people going through great lengths to try to deliver a message that was always never completely free and good and accurate communication-but always had some level of difficulty." She further opined that trying to communicate with someone whose first language is not ASL would be "almost impossible." When asked whether she could give an opinion as to whether Russ had been able to sign adequately while shackled during the plea and sentencing hearing, however, she responded that she could not because she had not been there.
>
> As the trial court observed, the expert's testimony-the only evidence presented at the postconviction hearing-was purely theoretical. It established that Russ could have had a very difficult time communicating information to others in the courtroom. Russ, however, must prove that he was actually prevented from effectively communicating. Russ presented no evidence that the shackles hindered him from imparting any particular piece of information or from directing questions to anybody in the courtroom. Neither his trial counsel nor the interpreters took the stand to attest to their inability at any point during sentencing to understand Russ; nor did Russ give any testimony of his own. Moreover, despite the court's invitation to let it know if the restraints prevented Russ from communicating adequately, Russ never notified the court of any such difficulty either personally or through counsel.
>
> Russ contends that although the State "defends the trial court's conclusion that Russ' arguments are nothing but 'theory' … the Supreme Court was not troubled by 'theory' in its just released decision about the shackling of a defendant during the

sentencing phase of a capital murder trial. Deck v. Missouri, [544 U.S. 622, 161 L. Ed. 2d 953, 125 S. Ct. 2007 (2005)]." Russ' reliance on Deck is misplaced. Although the court did comment that shackles could interfere with the right to communicate with counsel, see id. at 2013, this observation was dicta and not the reason the court vacated the sentence. Rather, the court was primarily concerned with the prejudicial effect of shackles. See id. at 2014. Deck involved the use of shackles in the presence of a jury in the sentencing phase of a capital murder case. See id. at 2009-10. Here there was no jury that the use of shackles could have prejudiced.

> We wish to emphasize that we base our holding solely on Russ' failure to meet his burden of proof, not on the trial court's assessment of Russ' ability to communicate based on its personal observations in the courtroom. Although we considered such evidence relevant to our decision in Yang, see Yang, 201 Wis. 2d at 739, in that case the trial court heard Yang speak in English, a language the court understood. Nothing in the record indicates that the court here understood Russ' sign language. All communication was filtered through interpreters. Thus, however appropriate and intelligent his responses may have seemed, the court had no way of knowing whether they were, in fact, responses to what the court actually said. Anything could have been lost in the translation, and the court was in no position to discern where any disconnect may have occurred.

Russ, 2006 WI App 9, ¶9-12.

"One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (U.S. 1970) (citing Lewis v. United States, 146 U.S. 370 (1892)). Although a defendant's right to be physically present is well-established, the Supreme Court has never held that a restraint upon a defendant's ability to communicate during any phase trial can amount to a violation of a defendant's constitutional right to be present at all stages of the proceedings against him. In fact, the Supreme Court has implicitly condoned restrictions upon a defendant's ability to communicate, albeit only as a last resort. See Allen, 397 U.S. at 344-45. However, there is no Supreme Court case directly on point, and therefore, "[b]ecause [United States Supreme Court] cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonably applied clearly established Federal law'. Under the explicit terms of

§ 2254(d)(1), therefore, relief is unauthorized." Wright v. Van Patten, 128 S. Ct. 743, 747 (per curiam) (internal citation and quotation marks omitted).

Additionally, even if this court were to conclude that a restriction upon a deaf defendant's ability to communicate during his pleas and sentencing hearing was contrary to clearly established Supreme Court precedent, this court would nonetheless find that Russ was not entitled to relief because, as the court of appeals noted in its decision, Russ has failed to demonstrate that he was prevented from effectively communicating at any point during his plea or sentencing hearing. Although the expert testimony adduced at the post-conviction motion hearing demonstrated that handcuffing and shackling a defendant who communicates by way of sign language could limit the defendant's ability to communicate, there is no evidence to suggest that Russ' ability to communicate was limited.

The transcript of Russ' plea and sentencing hearing reveals that Russ engaged in appropriate colloquy with the court regarding the waiver of his rights and the factual basis for his plea. However, it is unclear from the transcript of the sentencing proceedings whether Russ made oral statements or whether he communicated entirely by way of the sign language interpreters. For example, on page 974 of the Exhibit to the Answer, the court asks Russ to move closer to the microphone so the court can hear his statements. However, later in the transcript, at page 986, Russ responds to the court's question and indicates that he communicates through American Sign Language. Additionally, although the expert testified at Russ' post-conviction hearing that the signs for boy and girl must be made at the head and making the sign elsewhere would not be understood and thus a person who was handcuffed and shackled could not sign these words, during his plea hearing, Russ repeatedly used the word "girl" in discussing the factual basis for his plea. (Ans. Ex. at 979-82.) Finally, in denying defense counsel's request to remove the handcuffs and shackles, the court stated that it would reconsider if at any point Russ had trouble communicating. Nonetheless,

-8-
Case 2:07-cv-00232-AEG    Filed 02/27/08    Page 8 of 10    Document 13

neither Russ nor his attorney ever raised the concern that Russ was having any difficulty communicating during the hearing.

As for Russ' claim that he was denied his right to counsel, the Supreme Court has acknowledged the importance of "uninhibited communication between a defendant and his attorney." Morris v. Slappy, 461 U.S. 1, 21 (1983). "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. . . . He requires the guiding hand of counsel at every step in the proceedings against him." Geders, 425 U.S. at 88-89 (quoting Powell v. Alabama, 287 U.S. 45, 68-69 (1932).

However, like Russ' claim regarding his right to be present, the Supreme Court has never held that a physical restriction upon a defendant's ability to communicate to his attorney during a hearing violates a defendant's right to counsel. Thus, this court is unable to say that the decision of the court of appeals was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Additionally, the record is devoid of any evidence that Russ was ever prevented from effectively communicating with his attorney at any point during his plea or sentencing hearing. Thus, Russ has failed to demonstrate a factual basis for the conclusion that any constitutional right was violated by his being handcuffed and shackled during his plea and sentencing hearing.

Finally, this court finds no legal or factual basis to support the conclusion that Russ is entitled to federal habeas corpus relief on the ground that he was denied his constitutional right to due process by being handcuffed and shackled during his plea and sentencing hearing.

**IT IS THEREFORE ORDERED** that Russ' petition for a writ of habeas corpus is **denied**.

The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of February, 2008.

                                                                         _____
                                                                         s/AARON E. GOODSTEIN
                                                                         U.S. Magistrate Judge